RILEY AND ANOTHER *VS.* RILEY.

The husband may be the trustee of the separate property of his wife.

Where personal property is given to a married woman for her separate use, and no trustee is appointed, the husband will in equity be regarded as the trustee of such property for her.

A husband may make a suitable provision during coverture, out of his estate, for his wife; and such provision will be sustained in equity against him and his heirs.

The case of *Dibble* v. *Hutton*, 1 Day, 221, commented on.

A. about seven years before her marriage to B. loaned him $320, for which he gave her his two promissory notes, and in an interview with her, in contemplation of marriage, and shortly before that event, he promised her, that if she would not enforce the payment of the notes, they should remain good and collectable against his estate. He also, after the marriage, directed her to keep the notes, and said they would be good against his estate. A. always retained possession of the notes until after the death of B.—Held, that the promise of the husband was an antenuptial agreement made in consideration of forbearance to collect the notes, and that after his death, a claim for their amount by his wife, was properly allowed against his estate.—Held also, that such agreement was not within the statute of frauds, and might be proved by parol.

THIS was an appeal from the doings of the commissioners on the estate of John C. Riley deceased, tried at the term of the super or court, holden at Litchfield, in March 1856.

The widow of the deceased, whose name before marriage

was Sally Phelps, presented to the commissioners, for allowance, two notes, which were in the following words :

On demand, and interest, I promise to pay Sally Phelps, three hundred dollars, value received.

(Signed)          JOHN C. RILEY.

*Litchfield, Sept. 25th,* 1837.

On demand, and interest, I, for value received, promise to pay Sally Phelps, twenty dollars.

(Signed)          JOHN C. RILEY.

*Litchfield, April 7th,* 1837.

Six dollars paid April 28th, 1837.

The claim on said notes, amounting, on the 13th of December, 1855, to $627.85, was allowed by the commissioners, from which allowance the appeal was taken.

On the trial in the superior court, the execution of the notes was admitted, and it was proved that they were given for money lent, which money was received by the said Sally in part from her father's estate, and in part from her own earnings. The money was lent, and the notes given, before a marriage was contemplated between the parties. The marriage took place October 6th, 1844. It was proved that, shortly before the marriage, and in contemplation of that event, said Sally spoke to the deceased about the payment of the notes : he replied that it would be inconvenient for him to pay them then,—that they would be good against his estate. She told him that she did not want to be left in the hands of his relatives, and he replied that she should not be. It was proved that the deceased told said Sally, both before and after the marriage, to keep the notes, and they would be good against his estate, and that the notes were always kept by her; that two or three years before his death, she showed the notes to him, and he said, " All right; keep them, and they will be good." It was also proved that, during coverture, the deceased told a brother of the said Sally, that he calculated to pay said notes, and if he did not, they would be good against his estate ; and to the wife of her said brother he said, that he owed said Sally, and if he did not pay in his life-time, it would be paid on his death.

The notes in question were read in evidence on the trial, but the other foregoing facts were proved by parol evidence only, which was objected to, but received by the court, subject to the objection.

The questions whether such evidence was admissible, and whether the doings of the commissioners, in allowing said claim of the appellee, ought to be set aside, were reserved for the advice of this court.

*Woodruff* and *E. W. Seymour,* for the appellants.

1. By the marriage the notes held by the wife against the husband were discharged. 1 Sw. Dig., 28. Chit. on Cont., 782. Co. Lit., 264, Sec. 445.

2. The testimony is insufficient to establish any definite arrangement between the parties.

3. The parol evidence offered to show that there was an agreement by the husband, that the notes should remain good was inadmissible.

Such agreement if there was any, was " in consideration of marriage ;" and all promises in the nature of settlement, advancement or provision in view of marriage, are within the statute of frauds. They must therefore be in writing, and signed by the party to be charged therewith. 2 Pars. on Contr., 310. Comyn on Contr., 457.

4. The case is not taken out of the statute by the subsequent marriage, on the ground of part execution. Such a construction would annul and abrogate the statute. The doctrine of part performance seems to have been applied only to agreements for sale of lands.

It was never held, that a mere marriage exempted the case from the operation of the statute.

A subsequent marriage is not sufficient to take the case out of the statute, even in equity, in the absence of actual fraud. 1 P. Wms., 618. 1 Strange, S. C., 236. 1 Pars. on Cont., 554. 2 Pars. on Cont., 310. 1 Sw. Dig., 257. *Jenkins* v. *Eldridge,* 3 Story, 290, 291. *Reade* v. *Livingston,* 3 Johns. Ch. R., 481. Comyn on Cont., 457. Addison on Cont., 96. 2 Sw. Dig., 34. 2 Root, 164, 165.

5. The statutes of 1849, Ch. 20, 1854, Ch. 37, and 1855, Ch. 43, are prospective merely in their operation, and have no bearing on the present case.

*Hubbard* and *Catlin*, for the appellee.

· 1. It is a general rule of the common law, that where a feme creditor marries her debtor, the debt is discharged; the existence of the wife being considered as merged in that of her husband, or suspended during coverture. ·

It may well be doubted whether this rule should ever be adopted, in all its rigor in Connecticut, as our statutes recognize the separate existence of, and protect the property owned by a feme covert at the time of her marriage. Rev. Stat., p. 375, 377. Stat. 1855, Ch. 43.

It would seem more consonant to the spirit of our laws, that the operation of the marriage should be limited to a suspension of the remedy during coverture.

2. But to the common law rule, there are exceptions; as in all cases of contracts to be performed after the dissolution of the marriage; and chancery has so modified the rule, as to protect contracts intended to be performed during coverture.

In this case, there was a good and valid contract extending the time of payment of the notes until after the dissolution of the marriage, which has been fully performed on the part of Mrs. Riley.

It is true the statute of frauds requires all promises in consideration of marriage to be in writing. But the consideration of this promise was not marriage alone.

It was, at least in part, forbearance to collect the note. The case is not like that, where a man, in contemplation of marriage, promises to make a settlement out of his own estate; nor like a promise to secure to the wife her own property already in her own hands.

3. But, if the declarations made by the deceased are void as a promise, his administrator is estopped from saying that the notes are discharged by the marriage. Mrs. Riley relied upon the truth of the declaration, that " if she would keep

the notes in her own hands, they would be good against his estate."

4. The husband became the trustee of the wife, upon the marriage, and the case is not within the statute of frauds; for the rule in equity always has been, that the statute is not to be allowed as a protection of fraud, or, as a means of seducing the unwary into false confidence, whereby their interests are betrayed. *Jenkins* v. *Eldridge,* 3 Story R., 296, 1 Story, Eq. Jurisp., §§ 252, 256, 768, 1265. *Morris* v. *Nixon,* 17 Pet. R., 109. 1 How. R., 118. *Montacute* v. *Maxwell,* 1 P. Wms., 618, 620, and 1 Str. R., 236. 1 Paige, 147.

The appellee was induced to forego making any other disposition of her notes, than retaining them in her own hands, as her separate estate, by the express declaration, that if she would keep them, they would be good against the estate of the deceased.

5. A court of chancery will always grant relief, by creating an implied, or resulting trust, where it would be contrary to the principles of equity, that the husband should hold the estate otherwise than as trustee. 2 Sw. Dig., 112. 1 Vern., 365. 2 Barb. & Har. Eq. Dig., 464, 477, 478.

ELLSWORTH, J. The manifest equity of Mrs. Riley's claim, so strongly commends itself to our favorable regard, that we are happy to find that its allowance can be sustained by undoubted principles of law. Commissioners on insolvent estates are clothed with both legal and equitable powers, so that, if the principles of either jurisdiction are sufficient to uphold Mrs. Riley's claim, the appellant can not succeed in his appeal.

It appears, that some seven years before the marriage of Riley with Mrs. Riley, she made a loan to him of $320, for which he gave his two notes of hand. On the eve of the marriage, the parties, being aware that if the notes remained as they then were, they would be extinguished by the marriage, undertook to guard against this result, by his solemn promise, that if she would forbear to insist upon payment before marriage, the notes should not be extinguished by the marriage,

but should remain good and collectable, out of his estate. She complied with his request, and now, since he is dead, she seeks against his *heirs* that his promise may be recognized and performed.

Our interpretation of Riley's language, is not, we admit, free from all question or doubt, but, as it was certainly the expectation and intention of the parties that the notes should remain in force after the marriage, which could not be done but by the new promise founded on forbearance, we attach much force to the arrangement which they made, and adopt our interpretation of it as just and reasonable. We look likewise to what Riley said after marriage to Mrs. Riley and her friends, whenever these notes were alluded to, or made the subject of conversation. She too always kept the notes in her possession, as her own, with his entire consent, and on one occasion, when she showed them to him, he said to her "keep them and they will be good." We think that Riley undertook and agreed by an ante-nuptial promise, that the notes should not fall into his estate, but remain and survive to Mrs. Riley, like any other of her choses which he should forbear to collect during the coverture, and that these notes should at all times be, and continue her sole and separate estate, and that he would hold himself and his heirs, to be estopped from claiming the contrary to her injury. This is what the parties intended, judging from what they said and did. Now why can not this arrangement be upheld and enforced? Considered as an ante-nuptial promise, founded on the consideration of forbearance, it can be enforced *at law,* for it is a promise to be performed after coverture ceases, and is excepted from the common law maxim, that marriage releases subsisting contracts. *Brown* v. *Slater,* 16 Conn. R., 192. *Baldwin* v. *Carter,* 17 Conn. R., 201.

As to the objection derived from the statute of frauds and perjuries, we think there is no ground for it. The ante-nuptial promise was made in consideration of forbearance, and not in consideration of marriage, though it was made in contemplation of marriage, which is not inconsistent with the claim of the appellant's counsel, that a prom-

ise in consideration of marriage must be in writing. Marriage was not the meritorious cause of Riley's promise; the marriage obligation was already perfect, and the promise in question was made upon the assumption that it was so, and for the exact purpose of saving the notes from the effect of the marriage, when the marriage contract should be executed. No advancement or benefit was to accrue to either party in the event of the marriage, any more than if it did not take place, and hence it is not possible to consider marriage as the consideration of the promise. It was the debt—the forbearance of it; and, this forbearance having been extended upon the request of Riley, and continued until his death, there is no reason why his estate should not be liable.

This is all we need decide, in order to make a final disposition of the case ; but we go further. We see not why, in equity, Riley did not waive his right to have the notes treated as released by the marriage, and why he could not prevent the notes from being treated as paid and cancelled; and so kept alive for the benefit of his widow after his death, like the note of a stranger which she might have held at the time of the marriage. Such a note uncollected, would have survived to Mrs. Riley; and why not these, if the parties designed, and provided for it ? This might be so, unless we are bound in this instance by the case of *Dibble* v. *Hutton,* 1 Day, 221, respecting which, we will express our views in the sequel. Why are not Riley and his heirs estopped from avoiding these notes, by his declarations and conduct both before and during the coverture ? Had there been fraud on his part, there would be no doubt of the estoppel, and it is virtually a case of that character, if his estate is not now to be held liable for the payment of the debt. It is not unlike *Chamberlain* v. *Chamberlain,* 2 Freem., 34, where a father, about altering his will to provide for his daughter, was told by his son that it was unnecessary to do it, for that if he would let the will stand, he, the son, would see that she had the provision designed for her by the father's bounty. The will was left as it stood, and equity compelled the son and· heir to do as he had agreed to do. *Montacute* v. *Maxwell,* 1

P. W., 518. 2 Eq. Ca. Ab., 43. Pre., Ch. 43. New. on Cont., 179. This last book goes into this subject at great length and fully sustains the above doctrine.

We ask again, why, in the absence of creditors, these notes may not be held to be the separate and sole estate of Mrs. Riley, and her husband a trustee for her benefit ? This court has held that in a clear case of trust in favor of a married woman, the trust shall not fail for want of a trustee, and that the husband may be held to be the trustee of his wife if necessary. *Baldwin* v. *Carter*, 17 Conn. R., 201. *Brown* v. *Slater*, 16 Conn. R., 192. *Winton* v. *Barnum*, 19 Conn. R., 171. This is the law every where else, and we know of no doctrine of the law, which is better settled, than that where property is given to a married woman, for her sole and separate use, and there be no trustee, the beneficiary interest will not for that reason be lost, but her husband will be held to be her trustee if necessary. *Bennet* v. *Davis*, 2 P. Wms., 316. *Parker* v. *Brooks*, 9 Vez., 583. *Rich* v. *Cockell*, 9 Vez., 375. *Newland* v. *Paynter*, 10 Sim., 377. 4 My. & Craig, 408.

What language in a grant or gift to the wife, for her sole and separate use, will be sufficient to show that intent, is not in all cases clear of doubt, but so much is certain, that the meaning of the language made use of is not to be sought for, by applying any absolute or technical rule of law, nor any fixed rule at all. The question is always one of good sense, of the true meaning and intention of the grantor or donor, in creating an interest in the wife, separate from the husband. Certain language in the books has been decided to be sufficient, and beyond this the courts have not had occasion to decide, while all the cases recognise the general rule to be as has been already stated. In White's Leading Cases in Eq. Vol. I., p. 367, it is said that no particular technical form of words is necessary to create a trust for the separate use of a married woman. It is enough if there be a clear and unequivocal intent to exclude the rights of the husband. If it be plain from the language of the instrument, or from all the circumstances disclosed in it, that the intention was

to create a separate estate in the wife, the intention will be maintained and carried out. *Stewart* v. *Kissam*, 2 Barb. Sup. Ct., 494, 496. *West* v. *West*, 3 Randolph, 373. *Perry* v. *Boileau*, 10 S. & R., 208. *Ballard and wife* v. *Taylor*, 4 Dessau., 550. *Davis and wife* v. *Cains and wife*, 1 Ire. Ch., 305, 307. *Beaufort* v. *Collier*, 6 Hump., 487, 490. We need not say, that where the intention is not entirely clear, that the wife shall enjoy the estate to the exclusion of the husband, he will take it of course, according to the ancient principle of the common law, growing out of the fact that the husband and wife are one person, and that a gift to the wife is a gift to the husband. Now, to apply these principles to this case, we can not doubt that both before and after the marriage, Riley declared to Mrs. Riley, and intended that she should understand, that in consideration of forbearance, the debt should be paid out of his estate at his death, and that it should be hers exclusively, until it was so paid. Let it be remembered too, that it was the language of a debtor about to marry his creditor.

There is another question in the case, most worthy of consideration, if it may be considered an open question in this state at this day. We mean the effect in equity of a clear gift of property by the husband to his wife for her separate use, where there are no creditors to be injured; especially if the gift is a suitable provision for the comfort and maintenance of the wife. The doctrine of the books is certain and uniform, that he may not only give his wife pin money and her paraphernalia, but we believe other valuable gifts and grants which will be upheld in equity. He can be her trustee in case of a gift or grant from a stranger in this state, as elsewhere, irrespective of any antenuptial agreement, and irrespective of any such meritorious consideration as is claimed to exist in the present case, which is said to heighten the moral propriety of the appellees claim. In *Shepard* v. *Shepard*, 7 Johns. Ch. 57, it was held, that a deed directly from a husband to his wife, though void at law, yet if given for the purpose of making a suitable provision for the wife, such as a deed of certain lands, parcel of his estate, during her widowhood, is good in equity, and that that court will lend its

aid to enforce the provision, and especially if there be other meritorious considerations, like those which exist in the case on trial. The chancellor, after reviewing the cases, says that the deed to the wife of certain lands, being part and parcel of his estate, for and during her widowhood, was therefore no more than a just and suitable provision, and one that a court of equity can enforce consistently with the doctrine of the cases. The defendant does not stand in the light of a creditor or of a purchaser for a valuable consideration without notice. In *Jones & ux.* v. *Obenchain & al.*, 10 Gratt., 259, there is a case decided as late as 1853, by the highest court in Virginia, displaying great research, and accompanied with unanswerable argument. The marginal note of that case is this. " A deed from a husband to his wife conveying to her all his property real and personal, under circumstances show-ing a strong meritorious consideration, may be set up in equity against a nephew, the heir at law of the grantor." The meritorious consideration was this : A lady who was very young, married the grantor who was much older than herself and who had a family of children by a former wife ; a consideration not more meritorious than the one in the case on trial. In Sto. Eqt., vol. 2, § 1375, it is said that if the circumstances of the gift or grant, whether it be express or implied, are such that there is no ground to suspect fraud, but it amounts only to a reasonable provision for the wife, it will, though even made during the coverture, be sustained in equity; it might be otherwise, if there were creditors who were not paid. So in *Livingston* v. *Livingston*, 2 John. Ch., 537, the chancellor decided that " a husband and wife may con-tract for a *bona fide* and valuable consideration, for a transfer of property from him to her." So in *Neufville* v. *Thompson*, 3 Edw., Ch. 92, the vice-chancellor held, that " a gift to a married woman, whether by her husband or other person, and without the intervention of a trustee, will, in equity, be pro-tected when made in good faith, and when the rights of creditors are not affected." 1 Barb. Sup. Ct., 9. 6 Whart., 571. 17 Mass., 57. 20 Pick., 556. 5 Met., 280. 2 Sto.

Eq., § 1204.  3  P.  Wms., 338.  5 Vez., 71, 79.  21 E. L. & Eq. R., 556.

But to all this it is said that our law is otherwise, as was decided fifty years since, in *Dibble* v. *Hutton*, 1 Day, 221. In that case the judges adhered to the early doctrine of the common law, that the husband and wife are but one person, so that she can not have property, during the coverture, without the interposition of a trustee, other than the husband, and that the husband and wife can not contract with each other, nor can he give or grant to her property under any circumstances whatever, even in equity.  We are not called upon, at this time, to review the entire doctrine of that case, but we are satisfied that if it is intended to assert at this day, that in equity, the husband can not give or grant unto his wife, during coverture, that which is suitable for her maintenance and comfort, where there are no creditors to be affected, the position is at variance with the entire current of authorities in England and in this country.  Besides our court has repeatedly broken in upon one of the main doctrines of that case, in holding that the husband shall be a trustee for his wife, if property is given directly to her, for her sole and separate use, thereby fully recognizing their individuality in conformity to the law of equity elsewhere. The question can no longer be considered as standing where it stood fifty years ago.  That case is an anomaly in the law; and its doctrine is not at this time, nor was it then altogether satisfactory to the profession ; and further, it has been so materially encroached upon and modified by more recent decisions of this court, and more especially assailed by the wide spread sentiment of the community and the legislation of this and other states, that the doctrine of the case is viewed, as an illiberal and obsolete relic of the ancient law of *baron and feme*.  Our legislature has, if we mistake not, well nigh repudiated the essential doctrine of that case by the statutes of 1849 and 1855, which provide that all the personal estate which the wife has at the time of the marriage, or which accrues to her during coverture, by devise or inheritance, not only is to remain hers, but that her husband,

by force of law, shall be her trustee and may be compelled to give bonds for a faithful execution of the trust; and also provides that the husband's creditors can not take his life interest in her real estate. This is quite beyond the doctrine of the rights of married women, as they were held when *Dibble* v. *Hutton* was decided, and in some respects quite beyond the doctrine in equity at this day. Whether the statute law has not, in its desire to protect the property of the wife as if it was all to be to her ultimate sole and exclusive use, carried the doctrine too far, and given to the wife too much individuality, we will not inquire; experience will be our best instructor.

We need hardly remark, that by the above course of argument, our conclusion is, that the parol evidence which was objected to on the trial, was admissible, and that we advise judgment for the appellee.

In this opinion, the other judges, STORRS and HINMAN, concurred.

Report of commissioners established.