EDWARD TURNER *vs.* ANNA A. NYE & others.

If a husband, by the consent of his wife, receives money for the avails of real estate which came to her by inheritance prior to her marriage, and prior to the recent legislation in this commonwealth relating to the property of married women, and afterwards executes to her a promissory note for the amount thereof, with a memorandum thereon showing simply that it was given for the money received from that source, and that the money was used to build his dwelling-house, and delivers the same to her with a declaration that it belongs to her, and afterwards from time to time when giving her money says it is interest money, his estate after his death is not liable in equity for the payment of the note.

BILL IN EQUITY, in the nature of a bill of interpleader, by the administrator of the estate of Daniel P. Nye, seeking for the instructions of this court as to the discharge of his trust upon the following facts :

Thomas Taylor died in 1838 intestate, seised of certain real estate in Quincy, leaving a widow and several children, of whom Anna A. Taylor, who in 1848 intermarried with Daniel P. Nye, was one. On the 30th of June 1849 the widow and heirs of

Thomas Taylor, together with Daniel P. Nye, in right of his wife, made to the Old Colony Railroad Corporation a deed of a part of said real estate, and a lease of another part, with the right to take earth, gravel and other materials therefrom. The share of Mrs. Nye, amounting to $1975.21, was received by her of the corporation by their note, payable to their own order and indorsed in blank, and by them with her assent delivered to her husband, who, at or about the time of receiving it, made and delivered to her a note or memorandum in writing thereof. He also at different times afterwards received for her share of the sales of other portions of said real estate, and of money received from one Evans for trespasses on certain other portions thereof, various sums amounting in all to $2150, for which he delivered to her another note or memorandum in writing. There was no evidence as to the phraseology of these notes or memoranda, further than may be inferred from the memoranda upon the notes hereinafter copied. All of these sums were invested by him, with other money of his own, in the purchase of a lot of land in Quincy, and in building a dwelling-house thereon, in which he and his family continued to live until his death. On the 1st of July 1857 he made and signed the following notes and memoranda thereon:

" $2850. Boston, July 1st 1857. On demand after date I promise to pay to the order of Anna A. Nye twenty-eight hundred fifty dollars, value received, with interest. Danl. P. Nye.

" This note was given for the old note and interest that was given for money received from Old Colony Railroad for gravel. The money was used to build my dwelling-house.

"Danl. P. Nye."

" $2435. Boston, July 1st 1857. On demand after date I promise to pay to the order of Anna A. Nye twenty-four hun-lred thirty-five dollars, value received, with interest.

"Danl. P. Nye.

" This note was given for the old note that was given for my wife's interest in the Mann farm, meadow land, and money received from Evans. The money was used to build my dwelling-house.          "Danl. P. Nye."

In March 1860 he was thrown from his horse and fatally injured, and died intestate, without having recovered his consciousness, leaving a wife and four children, the defendants in this suit, and an estate amounting, after payment of his debts, to about $50,000. The plaintiff was appointed administrator.

The case was, by agreement of the parties, reserved by the chief justice upon the bill, answers of Mrs. Nye and of the guardian of the children, and a deposition of Mrs. Nye. The material portions of the deposition are as follows:

" The two notes copied in the bill were given to me by my husband in this way: He took the notes and showed them to me, and put them in a trunk with other papers. He told me that they belonged to me, in regard to the house — in words, ' Annie, these notes belong to you, in regard to the house.' The trunk was one we both kept our papers in. In conversation, oftentimes, he would repeat that the house was mine. I did not know in whose name the house stood, until after his death, when I was asked to buy it by the administrator. I did buy it after his death, subject to the right of dower. He never spoke to me about the shape of the deed, in case he sold the house and bought another, but merely said it should be deeded to me in case he bought another. He handed me money at different times, and would say, 'Annie, here is a little interest money.' This was both before and after the making of these two notes. The money received by me from my father's estate was paid to my husband with my assent. . . . . . . All our papers lay in the trunk together. These two notes were separate, put up together. We found them together. . . . . . . I had seen them when looking over other papers together [with my husband]. I never opened them. The papers were kept indiscriminately together. I gave $4000 for the house, at auction. That was agreed upon as about a fair price for the house, subject to my rights of dower. . . . . . . At the time money was received from the Old Colony Railroad and others for land of my father's, there was no agreement between my husband and me as to it; I simply let him take it. I do not recollect anything about notes given

previously to these. They might have been in that trunk; I cannot say. I had often said to him that I would like to have my money put into a house."

*H. Gray, Jr.*, for Anna A. Nye. A gift from a husband to his wife is good in equity. *Fisk* v. *Cushman*, 6 Cush. 25, and cases cited. He may be made a trustee for her, either by his own act, or by that of a third person. 2 Bright on Husb. & Wife, 214, 215. Hill on Trustees, (3d Amer. ed.) 48. *Rich* v. *Cockell*, 9 Ves. 374. The written instruments signed by him are sufficient evidence of a trust in her favor, by which he undertook to hold for her benefit certain sums of money; especially when taken in connection with his previous declarations and subsequent acts. *Murray* v. *Glasse*, 21 Eng. Law & Eq. R. 51. *Wheatley* v. *Purr*, 1 Keen, 551. *Stapleton* v. *Stapleton*, 14 Sim. 186, 197. *Airey* v. *Hall*, 3 Sm. & Gif. 322, 324. *Arms* v. *Ashley*, 4 Pick. 71. *Riley* v. *Riley*, 25 Conn. 154, 165. *Wallingsford* v. *Allen*, 10 Pet. 594. *Ex parte Smith*, 1 Rose, 210. If any consideration is required, the fact that this was a provision for a wife is sufficient. *Ellis* v. *Nimmo*, Lloyd & Goold temp. Sugd. 338–348, and cases cited. *Minturn* v. *Seymour*, 4 Johns. Ch. 500. *Beal* v. *Warren*, 2 Gray, 447. *Miller* v. *Goodwin*, 8 Gray, 544. *Sullivan* v. *Sullivan*, 21 Law Reporter, 543. Besides; it sufficiently appears that this money had always been held in trust for her, having been received upon leases and deeds to which her consent was necessary. *Bullard* v. *Briggs*, 7 Pick. 533, 537. There was a sufficient delivery. *Bunn* v. *Winthrop*, 1 Johns. Ch. 329. *Exton* v. *Scott*, 6 Sim. 31.

These instruments may be sustained in equity as debts due from the estate. *Dawson* v. *Kearton*, 3 Sm. & Gif. 186. *Burkitt* v. *Ransom*, 2 Colly. R. 395. 2 Kent Com. (6th ed.) 166. Or, if not, the land may be charged with the trust. *Barrell* v. *Joy*, 16 Mass. 223. *Thorpe* v. *Owen*, 5 Beav. 224. *Ouseley* v. *Anstruther*, 10 Beav. 461, 462.

*J. Lowell*, for the children.

DEWEY, J. That an action at law could not be maintained by Mrs. Nye to recover payment of the promissory notes given to her by her late husband is uncontroverted. The cases of

*Jackson* v. *Parks,* 10 Cush. 550, and *Ingham* v. *White,* 4 Allen 412, distinctly presented that question. They were cases where the consideration of the notes was the money or the avails of property held by the wife at the time of the marriage, but subsequently with her assent passed into the hands of the husband. The court held that the husband and wife were incapable of entering into such contracts with each other, and that the promissory notes of the husband thus given to the wife could not after his death be enforced by an action at law against his executor or administrator.

The further inquiry is, whether the wife, through the instrumentality of a bill in equity filed by the administrator on the estate of her late husband, asking the direction of this court as to his duties in this respect, may sustain a claim to recover the amount of the promissory notes set forth in this bill, and obtain an order directing the administrator to pay the same to her.

The position taken by the counsel for Mrs. Nye is, that the case discloses a trust declared by the husband in her favor, which equity will enforce. This is said to result from the notes and memoranda written thereon, taken in connection with the verbal statement made by the husband at the time the notes were shown to her, and placed by him in a trunk used by them in common. Independently of the objection to treating an ordinary promissory note as a declaration of trust in favor of the payee, a further and more serious objection arises from a consideration of the facts in relation to the time and manner in which the money came into the hands of the husband. The money thus received was the avails of property which the wife held by inheritance from her father, and which came to her as early as the year 1849, before the existence of the recent statutes greatly enlarging the rights of the wife as to any estate coming to her by descent, devise or gift.

As to this property, the husband had the common law rights. He thus held the right to receive the annual rents and profits accruing therefrom. Upon the sale of the same by their joint conveyance for money, the avails thereof would be personal property, and, if paid to the husband, would become his absolute

property; and if promissory notes were given in payment, then such notes were choses in action, reducible to possession by him, and when collected would vest absolutely in him. This money appears to have been received by the husband in the ordinary way in which such payments would be made to the husband, and not under any agreement previously made between the parties that the same should be held as her separate property when thus received. Indeed, the statement of Mrs. Nye directly negatives the making of any such agreement at that time between her husband and herself as to the money, when it was received by him.

There is nothing here to show that any trust was imposed upon the property, or the avails thereof, before the money came into the hands of the husband. The money when received by him was absolutely at his disposal. It was lawfully and properly received as his own, and differs in that respect from money received by the husband as the proceeds of property held by the wife in her separate right, over which he had no control.

In various ways the husband might have preserved the legal interest of the wife in the money thus received by him, so that upon his death she would be entitled to it. He might have done so by taking notes payable to her by a third person, and allowing her to retain possession of them; or he might have deposited the money in a bank to her credit, giving to her the bank book or certificate of deposit. But in these cases the distinction is very obvious, as there would be a legal third party to the contract, and the funds would be held by a person other than the husband.

The husband may be a trustee for his wife. Ordinarily, if such relation exists, he is made so by the act of a third person. Other cases are found where he is charged with an implied trust, when he has wrongfully and against her consent appropriated to his own use the avails of property held by her as gifts to her sole and separate use.

We have already seen that the present case has no such element. Neither was the property originally held to her separate use, nor was the money received therefor by the husband so

received against the consent of the wife. The case must be sustained, if at all, by the fact that after he had thus lawfully received and disposed of the money, he has, by the instruments in writing to which we have referred, by his statements as to the objects of the same, and by his acts in relation thereto, created a trust in her favor to the amount stated in the notes.

In the language of the notes themselves there is nothing but the ordinary promise by a maker of a note to pay a certain sum of money to the payee. If the case presented nothing further, we suppose it would hardly be contended that it amounted to anything more than an attempt to do what the law will not allow, namely, the giving of a valid promise by a husband to his wife to pay her a certain sum of money at a future day.

Do the memoranda annexed to these notes, taken in connection with the notes themselves, create a trust which the wife may enforce? They seem to do no more than to state the consideration of the notes, and that they were given for older notes of a date not stated, that were given for money received from sales of land, and use of land, formerly belonging to Mrs. Nye, adding the fact that the money was used to build his dwellinghouse. But we find nothing indicating that, by an arrangement between the parties, the sum thus received and specified by these notes was originally received by him to be held in trust for his wife. Nor do the statements made by the husband at the time of showing the notes to her establish such fact. See *Antrobus* v. *Smith*, 12 Ves. 46; *Edwards* v. *Jones*, 1 Myl. & Cr. 226; *Meek* v. *Kettlewell*, 1 Phillips R. 342; *Jefferys* v. *Jefferys*, 1 Craig & Phillips, 138; 1 White & Tudor's Lead. Cas. in Eq. 121, 129.

These notes cannot be enforced in equity as gifts from the husband. The promissory note of the husband to the wife would not be a valid gift to be enforced at law or in equity, where it was a mere gift.

An examination of the numerous cases cited in behalf of the wife has failed to satisfy us of the existence of judicial precedents that would authorize us to hold that these written

instruments, under the circumstances attending their execution, created a trust in favor of Mrs. Nye.

The case of *Murray* v. *Glasse*, 21 Eng. Law & Eq. R. 51, seems to be the only case where a promissory note given by the husband for the payment of money has been held a good declaration of a trust for the wife. But that case is, we think, distinguishable from the present. There the wife had a separate estate secured to her use, and the property was placed in the hands of trustees. She kept her separate bank account. She drew checks in her own name for the money, and upon paying over to her husband the sums so received he gave to her at the time a memorandum, and at the end of each year gave her a promissory note for the amount of the checks. Under these circumstances the court were of opinion that the sums specified in the notes were held by the husband in trust, and that the wife might recover the same. In the present case the property received by the husband was not the separate property of the wife, set apart by the giver to her own use, and guarded by a conveyance to trustees; and the wife did not assert her rights in it at the time of his taking it into his possession.

The case of *Riley* v. *Riley*, 25 Conn. 154, may be considered as one of the cases most favorable to the general principle of the liability of the husband to be charged as a trustee for the wife, by reason of holding her funds. Many cases are there cited to show that a husband may be trustee for his wife of gifts to her from others, and that he may himself give property to her, and that equity may sustain the gifts, if no rights of creditors intervene. But a promissory note executed by a husband as a mere gift is not a valid gift of that character. The claim of the wife in the case of *Riley* v. *Riley* had a legal foundation, the note having been given before the marriage; and the question was, under what circumstances a court of equity could save it from the operation of the principle of the common law that the marriage between the parties to the note had discharged the same absolutely, so that upon the dissolution of the marriage by the death of the husband, the same could not be enforced.

Without, however, entering upon any broader field of inquiry than the case before us demands, and looking at the precise facts here existing, the court are of opinion that the evidence fails to establish a trust in favor of the wife, for the amount stated in the notes, which can properly be enforced under this bill in equity. Nor does it show a trust in her favor in the dwell-ing-house. The same objection arises here, that the money expended upon the dwelling-house was not her money. Before being thus applied it had become the property of the husband. Again; a resulting trust is not created by implication of law in favor of one who pays part of the purchase money of real estate, unless such payment is made for some specific part or distinct interest in the estate. *McGowan* v. *McGowan*, 14 Gray, 119. And Mrs. Nye has now the entire property in the house by her purchase at a sale authorized by license of the probate court. This claim cannot therefore be maintained.

Nor, under this bill in equity, can the payment of these notes be directed as a debt due from the estate to Mrs. Nye, although the estate is solvent, and no rights of creditors intervene. The notes are not evidences of a debt due from the husband. The promises fail to acquire that character, from want of capacity in the parties to create such liability to each other as debtor and creditor, as has been already shown by the cases of *Jackson* v. *Parks* and *Ingham* v. *White, ubi supra.*

The result is, that, in the opinion of the court, the adminis-trator cannot rightfully pay to Mrs. Nye these notes, as claims against the estate of her late husband.