Smith *v.* Chapell.

--------

# SUPREME COURT OF ERRORS.

## NEW LONDON COUNTY, OCTOBER TERM, 1863.

### Present,

HINMAN, C. J., SANFORD, BUTLER, DUTTON AND McCURDY, Js.

JOHN SMITH, TRUSTEE, *vs.* NATHAN C. CHAPELL.

It is well settled, both in England and in this country, that an ante-nuptial agreement may vest the equitable title to personal property in the wife, while the legal title vests by the marriage in the husband.

Where by an ante-nuptial agreement made in England, where the parties resided, certain money belonging to the wife was to remain hers and be under her control, and the parties afterwards removed to this state, and the husband here allowed the wife to keep and control her money, and to trade with it on her own account, and she purchased with it a horse and wagon, which was afterwards attached as his, it was held that upon the facts the jury might properly find that the equitable title to the property was in the wife.

Where the judge charged the jury that such would be the result if the husband had done some distinct and unequivocal act after they came into this state, showing his intention to give the money to the wife, it was held, on a motion of the defendant for a new trial, in an action of trespass for the attachment of the horse and wagon, that the charge was more favorable to the defendant than he had a right to claim.

Held that the suit was properly brought by the husband as trustee of the property for the wife.

TRESPASS, with a count in trover, against the defendant, a deputy sheriff, for the wrongful taking and carrying away of a horse, wagon, and harness, claimed by the plaintiff to be held by him as trustee for his wife, Caroline Smith, and which had been attached by the defendant as the property of the husband. The case was tried to the jury in the superior court on the general issue, before *Park, J.*

On the trial the principal question was, whether the property attached belonged to the plaintiff or was the property of his wife. The plaintiff claimed and offered evidence to prove that he was married to his wife, in England, on the 17th of December, 1855; that after living in England about fourteen months they removed to this country, coming directly into the state of Connecticut, where they have ever since resided; that his wife, at the time of her marriage, had certain moneys which she had earned at service in England; that they had at the time of their marriage a definite understanding and agreement that her money should remain hers, and that she should have the control, use and disposal of it as she pleased; that ever since it had been regarded by him as hers, and always treated by him as hers, and that he repeatedly so declared to her that it was; that in pursuance of the agreement the money had ever since remained in the custody and possession of the wife, and that she had always treated and regarded it as hers; that the plaintiff never knew and never inquired, either in England, or on their passage thence, or in this country, how much money his wife had or where it was kept by her; that since their residence in this state his wife had at sundry times invested part of her money and trafficked in various ways with it, and had been known as the responsible and paying party in all her purchases, and had kept the returns and profits of such investments in her own separate purse and possession; that one of her investments was the wagon in suit, which was paid for out of her money; that a horse was bought and paid for out of her money, and that she exchanged horses several times, till she became the owner of the horse in question; that she purchased her first horse and the wagon in question in the year 1860, and that about the same time the

harness in question was given to her by her brother; that from the time she became possessed of the wagon, harness and horses, she had controlled the use and letting of the same, and received the income of such letting, and had paid all bills of repairs upon the wagon; and that over the wagon, harness and horses she had always claimed control and exercised acts of ownership, and that the plaintiff had never done either. Against all these facts the defendant offered no testimony.

The defendant requested the court to charge the jury—
1. That the law of England, where the parties were domiciled at the time of their marriage, controls as to the personal property of the wife in possession; and that by that law the money of the wife vested absolutely in the husband, and the title would not be divested by any law of this state in consequence of their removal into it. 2. That if the title was thus in the husband it would require some distinct and unequivocal act on his part, showing an intention on his part to divest himself of that title, or some declaration in writing conveying the property for her use. 3. That if the property attached was the property of the wife, the action, being brought in the name of the husband as trustee, can not be sustained.

The court charged the jury in substance as follows:

"It appears to the court that the claim of the defendant is correct. The statute of our state would not operate to divest the husband of his interest in the money in question, if the money belonged to the husband when the parties came into this state. The question is, was this the money of the husband or the wife when they came into this state. If it was the husband's it remained his, unless there was some distinct, unequivocal act of his conveying the property to her. In order to ascertain to whom this property belonged it is necessary to go back to England. Undoubtedly by the common law (which it is conceded was in force at the time of the marriage) the property would vest in the husband, unless some act of the parties intervened to prevent it. The plaintiff claims that the acts and conduct of the parties changed what would have otherwise been the result by operation of the common law, and that in fact this money never was the property of the hus-

band; that by agreement of the parties at the time of their marriage and afterwards, the money that belonged to the wife when married remained hers. You will inquire from all the evidence in the case whether there was such an agreement, and whether the plaintiff did perform some distinct, unequivocal act, showing an intention to divest himself of the title to the property in question, or not. If such was the case, and he conducted himself toward this property at all times in accordance therewith, then the property would be the wife's." The court further charged that the action could be maintained by the husband as trustee for his wife if the property was hers.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial for error in the charge and on the ground that the verdict was against the evidence.

*Halsey* and *Pratt*, in support of the motion, cited 1 Swift Dig., 26; Reeve Dom. Rel., 1; *Blanchard* v. *Blood*, 2 Barb., 352; *Ryder* v. *Hulse*, 24 N. York, 372; *Illexan* v. *Wilson*, 43 Maine, 186; *Washburn* v. *Hale*, 10 Pick., 429; *Deming* v. *Williams*, 26 Conn., 226; *Dodgson* v. *Bell*, 3 Eng. Law & Eq., 542.

*Park* and *Lucas*, contra, cited *Murray* v. *Glasse*, 21 Eng. Law & Eq., 51; *Mews* v. *Mews*, id., 556; *Deming* v. *Williams*, 26 Conn., 226; *Stanwood* v. *Stanwood*, 17 Mass., 58; *Phelps* v. *Phelps*, 20 Pick, 556; *Adams* v. *Brackett*, 5 Met., 285; *Fisk* v. *Cushman*, 6 Cush., 27; *Hills* v. *Hunt*, 9 Gray, 66.

DUTTON, J. The plaintiff brings this suit as trustee of his wife. On the trial he offered evidence to show that they were married in England, and that at the time of their marriage it was agreed between them that whatever personal property she had should remain hers, that they both after marriage treated it as hers, that they subsequently came to this state, and that he has at all times allowed her to have the exclusive control of it, and that with some of the avails of it she bought the horse and wagon in question. The harness was given to her by a friend in 1862. The defendant attached the property as the property of the husband for a debt due from him. The

defendant admitted that if the husband, after marriage and after the removal of the parties to this state, showed his intention to divest himself of the title and vest it in the wife by some distinct unequivocal act, the plaintiff was entitled to recover.  No question was made whether such a conveyance would be good against creditors, and we are not called upon to express any opinion upon that point.  But the defendant insisted, rather inconsistently it would seem, that an agreement made at the time of marriage would not have that effect.  A gift after marriage would not divest the husband of the legal title, and accordingly the husband in this case sues as trustee.  But it is well settled, both in England and in this state, that an ante-nuptial agreement may vest the equitable title to personal property in the wife, while the legal title vests by the marriage in the husband.  *Imlay* v. *Huntington*, 20 Conn., 146; *Riley* v. *Riley*, 25 id., 154.  It is not easy to see therefore why the husband could not be proved to be a trustee of his wife as well by an ante-nuptial agreement as by a subsequent gift.  The defendant however asked the court to charge the jury that by the law of England the money of the wife by the marriage vests absolutely in the husband; and he complains because the judge charged the jury that by the common law the personal property of the wife would vest in the husband, unless some act of the parties intervened to prevent it.  He insists that this qualification was erroneous, because no act of the parties could prevent the vesting of the legal title.  If the defendant meant to claim only that the naked legal title would vest unqualifiedly in the husband the point was of no importance, for no such question arose in the case.  The plaintiff could not and did not deny this doctrine.  He had no title himself except what depended on the application of this principle.  The charge of the court must be understood with reference to the real questions which were tried.  When therefore the judge spoke of the intervention of some act of the parties preventing the vesting of the title in the husband, he spoke not of the mere legal title which both parties claimed and were obliged to claim was in the husband, but of the real beneficial title, which we have seen may, either

by an ante-nuptial agreement or by a subsequent gift of the husband, be vested in the wife. In this light it is not easy to see why the charge on this point, even if taken by itself, was not strictly correct. But the whole charge ought to be taken together, and then it will appear that if either party had reason to complain, it was not the defendant. The judge began the charge by saying that "the claim of the defendant," that is, it may fairly be inferred, the claim that there was a necessity for some unequivocal act or declaration of the husband after marriage, "was correct." Subsequently, with reference to the agreement claimed, he said to the jury—"You will inquire from all the evidence in the case whether there was such an agreement, and whether the plaintiff did perform some distinct unequivocal act showing an intention to divest himself of the title to the property or not. If such was the case, and he conducted himself toward this property at all times in conformity therewith, then the property would be the wife's." From this language the jury could not fail to understand that whether they found a previous agreement or not, they must find that there was after marriage an unequivocal act of the husband, followed up consistently by his whole course of conduct, showing an intention to give the property to the wife. We think therefore that the charge, certainly as against any objection of the defendant, was unexceptionable.

On the motion for a new trial for a verdict against evidence, it is evident that the verdict was in favor of the proper party, as the proof was that the harness at any rate belonged to the wife. As there is nothing to show clearly that all the damages that were given in the case were not for this article, perhaps it is not necessary, on this motion, to go further. But as we can not well avoid the conclusion that a part of the damages were for the horse and wagon, and as the main question which the parties intended to try, that is, whether there was enough done by the husband to constitute a gift to the wife, is presented by this motion, we think it best to consider this point. The defendant insists that it does not appear from the evidence that there was any act on the part of the husband; that all the proof is of a negative character, showing merely that the

husband did not see fit to interfere. On this question the agreement made at the time of marriage is of material importance to explain the subsequent conduct of the parties. It can not be said that the husband did not act. Silence is sometimes more expressive than words. By seeing his wife manage the property as her own he adopted her acts. By allowing her to treat and regard the property as her own, involving her in liabilities, and changing her situation, both as it regarded the property and her relation to other persons, he estopped himself, so far as she was concerned, from claiming it afterwards himself. The total neglect of a husband to avail himself of property to which he has a clear legal right, and allowing his wife to call it and treat it as her own, is wholly inconsistent with any intention on his part to reclaim it. There have been repeated instances in this state in which this court have held that acts certainly not more unequivocal than were shown in this case, vested the equitable title to personal property in the wife. In *Riley* v. *Riley*, 25 Conn., 154, there was an antenuptial agreement, and, in connection with this, proof that the husband repeatedly after marriage told his wife to keep the notes and that they would be good against his estate. He also said the same to her brother. She did keep the notes. This was held sufficient to vest the equitable title in her. The only difference between that case and this is, that there the husband manifested his intention by words, and here by his conduct. In *Deming* v. *Williams*, 26 Conn., 226, the husband merely transferred bank stock to the name of his wife, stating that it was hers. In *Jennings* v. *Davis*, 31 Conn., 134, a husband allowed his wife to sell certain personal property the legal title to which was in him, to vest the avails in bank stock in her own name and take the dividends. After her death, as her administrator, he sold the stock and deposited the money in the savings bank to the credit of her estate, and it was held that the money so deposited ought to be regarded as a part of her estate. Here nothing took place between the husband and wife while both were living, and when only an equitable title could vest in her, except as in this case the silent assent of the husband to the acts of the wife. There was more evi-

dence in this case than in that to show a complete disclaimer on the part of the husband of all title to the property, and an intent that the wife should have an absolute right to use and dispose of it as her own.

We do not advise a new trial.

In this opinion the other judges concurred.