# SUPPLEMENT.

43 569
60 481

## CHARLES B. WILLIAMS vs. BELINDA M. KING.

The Connecticut statute of 1872, which gives a right of action against a married woman upon any contract made by her upon her personal credit, for the benefit of herself, her family, or her separate or joint estate, merely changed the form of the remedy upon the liabilities of a married woman and did not create any new liability. It authorized an action at law upon the same cause of action that she would have been liable upon in equity.

The statute therefore applies to pre-existing contracts.

The separate estate of a married woman will in equity be held liable for all the debts which she expressly or by implication charges thereon. It will thus be charged by implication with the payment of debts contracted for the benefit of the estate, or for her own personal benefit and upon her personal credit.

It is to be presumed, in the absence of evidence to the contrary, that a contract entered into by a married woman having a separate estate, for its benefit or for her exclusive benefit, was contracted upon the credit of her estate.

A note was given by a married woman for the purchase price of stocks which she had herself bought. Held to be a debt contracted for the benefit of her estate.

The personal property of a married woman, which is by the statute vested in the husband as her trustee, is not her sole and separate estate, and is not bound by the wife's contracts.

But if the husband transfers such property to the wife, or relinquishes his rights with regard to it, it becomes the sole and separate estate of the wife, even if no words of exclusiveness are used.

He may still be her trustee under the general rules of equity, to preserve the title to the property, but not under the statute.

Merely permitting the title to stocks or bonds to remain in the name of the wife, or permitting her to collect interest or dividends, without any other circumstances to indicate an intention to give up the trust, would not be sufficient to establish a relinquishment of the trust; but if in addition to this he should permit the wife to manage the property as her own, to sell it and invest the proceeds in her own name, or if, the stock standing in his name, he should transfer it to her, taking a certificate in her name, these acts would furnish satisfactory evidence of his intention to relinquish all his claim to the property.

Where a husband subscribed for stock in the name of his wife and as her attorney, it was held to be an unequivocal act, indicating his intention that the stock should be held by her for her sole use.

Whether, under the statute, real estate conveyed to a married woman, without words indicating an intention that it should be held for her sole use, is to be considered as her sole and separate estate: *Quære.*

ASSUMPSIT upon a promissory note executed by the defendant, a married woman; brought to the Circuit Court of the United States for the District of Connecticut, and heard before *Shipman*, District Judge, at the September Term, 1875, upon the general issue closed to the court. The case is fully stated in the opinion.

*A. P. Hyde*, for the plaintiff.

*J. S. Beach* and *E. W. Seymour*, for the defendant.

SHIPMAN, J. This is an action of assumpsit against a married woman to recover the amount of a negotiable promissory note for the sum of $2,500, made and signed by her alone, dated December 17th, 1868, and payable eighteen months after its date to the order of William C. Hurd, and by him endorsed to the plaintiff. The defendant executed this note in consideration of the sale to her, by the payee, of certain shares of the corporation known as The Silex Lead Company. The case was tried by the court upon the following agreed statement of facts.

The defendant was married November 2d, 1864, to O. B. King of Watertown, Connecticut, with whom she has ever since lived as his wife. She executed the note in question at said Watertown upon the day of its date, to wit, December 17th, 1868, for the consideration stated in the declaration. At the time of her marriage she was possessed of property, real and personal, exceeding in the aggregate twenty thousand dollars. A portion of the personal property consisted of stocks in sundry incorporated companies, some of which stocks have been sold since her marriage, and re-investments made of the avails thereof in other stocks both before and since the execution of said note, which re-investments have not diminished the value of the property owned by her at the time of her marriage. In making these re-investments, the shares of stocks purchased or subscribed for have been issued to the wife in her own name, and the subscriptions thereof when made were made by her husband acting as her attorney. None

of the property owned by her at the time of her marriage had been settled to her sole and separate use, nor has any of her property since acquired been conveyed to her in consideration of her personal services during such coverture.

The General Assembly of the state of Connecticut passed, in the year 1872, the following act:—"Actions at law may be sustained against any married woman upon any contract made by her, upon her personal credit, for the benefit of herself, her family, or her estate, * * * * in the same manner as if she were sole, single and unmarried." It is admitted that this act simply changed the form of the remedy for liabilities which had been or should be incurred by married women, and did not create any new liability, and therefore applied to pre-existing contracts. *Buckingham* v. *Moss*, 40 Conn., 461. The statute authorized an action at law against a married woman for the same cause of action upon which she would previously have been liable in equity. Another act had been passed in 1869, in regard to suits against married women, but as this act was clearly prospective, its effect need not here be considered.

The general question which is now to be determined is, whether under the statutory system of Connecticut in regard to the property of married women, as that system existed in 1868, a bill in equity could have been maintained against the defendant to enforce payment of this note from her real or personal property.

"The separate estate of a married woman will in equity be held liable for all the debts, charges, incumbrances, and other engagements, which she does expressly or by implication charge thereon." 2 Story Eq. Jur., § 1399. Her separate estate is by implication charged with the payment of debts contracted for the benefit of the estate, or for her own benefit and upon her personal credit. Whether the contract was made upon her personal credit, depends upon the circumstances of the case, but it is not necessary that the contract should make any reference to the separate estate, and it is presumed that a contract entered into by a married woman having a separate estate, for its benefit, or for her exclusive benefit,

has been contracted upon the credit of her estate. *Corn Exchange Ins. Co.* v. *Babcock*, 42 N. York, 638; *North American Coal Co.* v. *Dyett*, 7 Paige, 9; *Battin* v. *Dillaye*, 37 N. York, 35; *Mrs. Matthewson's Case*, L. R. 3 Eq. Cases, 781. The Connecticut statute, which was in affirmance of the equity principles of the common law, declares the liability of a married woman to be "upon any contract made by her upon her personal credit, for the benefit of herself, her family or her estate."

The contract which is now in suit is a note entered into by a married woman for the purchase price of stock which she had herself bought. A debt contracted for the purchase of property, which goes into the actual or constructive possession of the purchaser, is a debt contracted for the benefit of his estate. *Battin* v. *Dillaye*, 37 N. York, 35.

These principles being admitted, the question upon which the parties are at issue is, whether the defendant had or had not any separate estate which could be bound or held liable for the payment of her note. If she had none her contract was invalid in law and inoperative in equity. If she had separate estate it is admitted that the contract was in equity valid and operative.

The statute of Connecticut, which was in force in 1868, in regard to the personal property of married women, provided in substance that all the personal property of any woman married since the 22d day of June, 1849, and all the personal property thereafter acquired by a married woman, and the avails of any such property if sold, shall vest in the husband in trust for the following uses: to receive and enjoy the income thereof during his life, subject to the duty of expending from such income so much as may be necessary for the support of his wife during her life, and of her children during their minority; and to apply any part of the principal thereof which may be necessary for the support of the wife or otherwise with her written assent, and upon his decease the remainder of such trust property shall be transferred to the wife if living, otherwise as the wife may by will have directed, or in default of such will to those entitled by law to succeed to her intestate estate.

The rights in the personal property of the wife, which are conferred upon the husband by this statute, are a modification of the rights which were vested in him by the common law. He formerly had an absolute estate; he now has a trust estate, with the right to receive and enjoy the income during his life, which income must however be appropriated, if necessary, to the support of his wife and minor children. This peculiar statutory estate is very far from being a sole and separate estate of the wife, which is defined to be " that estate, either real or personal, which is settled upon the wife, to her separate use, without the control of her husband." *Butler* v. *Buckingham*, 5 Day, 492. · The husband is vested with the trust estate, and the legal title to her personal property, by virtue of his position as husband. He is not trustee to her sole and separate use, but receives and enjoys the income during his life. By virtue of the marital relation he has the custody and control of the property and of the rents and income thereof until he is removed from the trusteeship for cause, or until he abandons his wife, and in the latter event only does the property vest in her as her sole estate. If the wife could during the trusteeship of the husband bind the trust property by her own obligation, the checks which the statute has attempted to place upon her right to the enjoyment of the property during her life, would be of very little avail.

The intent of the statute was to modify the severity of the common law, and preserve her personal estate for her heirs, but not to place it within her control as her separate estate, unless by the agreement of the parties. Chief Justice SEYMOUR, in *Cooke* v. *Newell*, 40 Conn., 596, defines the nature of the estate which is created by the statute, as follows: " The statute limits the rights of the husband in his wife's property, but does not deprive him of all right. It leaves him the income and profits of it, and, except so far as specially restrained, he has the care, management, and control of it during his life. The trust is therefore not to the sole and separate use of the wife, free from the control of her husband. She has not that control of it which she has in equity of her separate estate."

It follows, that the personal property which is vested in the husband as trustee, and the title of which has never become divested, is not bound by the wife's contracts.

But, by ante-nuptial or post-nuptial agreement, the wife's property may be settled upon her to her separate use freed from the trust. The husband may, after marriage, give his own property to the wife, when the rights of creditors do not interfere, in which case she will take a sole and separate estate. The husband will have thereafter by virtue of the statute no such use or life estate in the property so given, as would be vested in him in respect to personal property given to the wife by a third person without words indicating that it was to her sole use. If an absolute gift is made to her by the husband, it is to her exclusive use, although words of exclusiveness are not used, and he cannot resume the use or control of the property by force of the statute. He will be her trustee under the general rules of equity, if necessary to preserve the title to the property, but not under the statute. *Riley* v. *Riley,* 25 Conn., 154; *Deming* v. *Williams,* 26 Conn., 226; *Baldwin* v. *Carter,* 17 Conn., 201.

The husband may also by clear and unequivocal acts free the property of the wife from the trust which the statute has created, divest himself of the estate which he has in consequence of the marriage, and give to the wife the entire estate and right to the income, so that as to the personal property which he has thus transferred, while the legal title may remain in him, she will have a sole and separate estate. Merely permitting the title of stocks or bonds to remain in her name, or permitting her to collect interest or dividends without any other circumstances to indicate his intention, would not show that the trust was waived. But if in addition he permits the wife to manage the property as her own, to change its character, to sell it and invest the proceeds in her name, or if he transfers the stock to her, giving her a certificate in her own name, by these and like acts he furnishes the clear and satisfactory evidence which the law requires of his intention to relinquish all his claim to her property, and to give to her its complete control. *Smith* v.

*Chapell*, 31 Conn., 589; *Jennings* v. *Davis*, 31 Conn., 134; *Fuller* v. *Mason*, 36 Conn., 160; *Hoyt* v. *Parks*, 39 Conn., 357.

The summary of facts in this case states that a portion of the personal property which the defendant owned at the time of her marriage, consisted of stocks in incorporated companies, some of which have been sold since her marriage and re-investments made of the avails thereof, both before and since the execution of the note in suit; and that "in making these re-investments, the shares of stock purchased or subscribed for have been issued to the wife in her own name; and the subscriptions therefor when made were made by her husband acting as her attorney." It thus appears that before the execution of this note, the purchased stocks were issued to the wife in her own name, although the statute provides that all re-investments shall be made in the name of the husband as trustee. But a more significant and unequivocal act, indicating an intent upon the part of the husband to abandon the trust estate as to a portion at least of the property, and give to the wife the interest which he had in that portion, is the fact that the subscriptions for new stocks were made by the husband acting not as trustee but as her attorney.

These subscriptions, being made by her attorney, must have been made in her name, and the certificates must also have been issued to her in her name by the direct agency of her husband acting in her behalf. These positive acts of the husband leave no doubt, under the Connecticut decisions in regard to the statutory status of the wife's property, that he had given to her the entire control of so much at least of the personal property as he had then deliberately subscribed for in the name of the wife, and therefore that at the time of the execution of the note she had separate property, which was intended to be and was bound by her contract made for the benefit of her estate.

It is not necessary to decide whether the real estate was the separate property of the wife. The brief statement of facts does not show whether the real estate was situated in Connecticut or not, but it is inferred that it was situated in

this state. As it is a question of importance whether under the statutes of Connecticut real estate which has been conveyed to a married woman, without words indicating that it was conveyed to her sole use, is to be considered as her separate estate, and as it is a question not necessary to be now decided, I express no opinion upon this branch of the case.

Let judgment be entered in favor of the plaintiff.