Jennings v. Davis.

# SUPREME COURT OF ERRORS.

## FAIRFIELD COUNTY, OCTOBER TERM, 1862.

Present,

HINMAN, C. J., SANFORD AND DUTTON, JS.

AUGUSTUS JENNINGS, EXECUTOR, *vs.* HENRY DAVIS, ADMINISTRATOR.

A husband may in equity make a valid gift of personal property to his wife, where the rights of creditors do not interfere.

But clear evidence of the intention of the husband to make such gift will be required.

Where the only evidence of such intention was the fact that a bill of sale of furniture purchased was made out to her at the time of the purchase, but it was not shown that it was done by his direction or even with his knowledge, it was held that the intention was not sufficiently established.

Where however certain personal property was distributed to the wife, which vested by law in the husband, and the husband allowed her to sell it and invest the proceeds in her own name in bank stock, did not receive the dividends during her life, and after her death as her administrator sold the stock and deposited the proceeds in the savings bank to the credit of her estate, it was held to be satisfactory proof of his intent to give her the property and its proceeds.

The act of 1850, (Comp. 1854, p. 377,) provides that where the real estate of a married woman is sold and the avails are "secured or invested in her name," the same shall in equity belong to her. Where a note was taken in the name of the wife for the price of her land sold, it was held that the avails of the sale were *secured and invested* in her name within the meaning of the statute.

Where money received by the wife for her real estate sold was deposited by her in her own name in bank, it was held to be *invested* within the meaning of the statute.

If the money so deposited could not be regarded as invested, it would be considered as still in the possession of the wife, deposited for safe keeping to await an investment.

Jennings *v.* Davis.

Where certain railroad bonds were taken in the name of the wife for her real estate sold, and after the wife's death the husband received the interest upon them, it was held that the bonds belonged to her estate, and that the estate of the husband was liable to her representatives for the interest so received.

Where a note had been given payable to the wife for the price of her land sold, and afterwards the maker had done work on buildings belonging to the wife, under an agreement with herself and her husband that his bill of work should be indorsed on the note as part payment of it, which however was not done, and the note was kept by the husband until his death and was always claimed by him, it was held that the note was the property of the wife, but that the bill of work ought to be applied in part payment of it.

AMICABLE submission to the superior court, by the plaintiff as executor of the will of Gideon Morehouse, and the defendant as administrator of the estate of Eunice Morehouse, a former wife of Gideon Morehouse, upon the following agreed statement of facts:—

Eunice Morehouse was the daughter of William Robinson, and was married to Gideon Morehouse in 1828. William Robinson died in the year 1832, leaving a will, which contained the following legacy:—" I give to my wife the furniture of all descriptions now in my dwelling-house, to have and to use the same during her natural life, and after her death the same is to remain and be divided equally among the above mentioned children, Nabby, the wife of J. W. Davis, Eunice, the wife of Gideon Morehouse, Sophronia and Jerusha." The widow of William Robinson died in 1850. Eunice Morehouse died October 7th, 1854. She had had a living child during the coverture, which died before her decease. Gideon Morehouse survived her, married again, and died April 9, 1861. Soon after the death of the widow of William Robinson, the furniture was by agreement of all parties interested, including Gideon Morehouse and his wife, sold at auction, for their common benefit, and a part of it was bought in, either by the said Gideon or the said Eunice, (it did not appear by the personal agency of which of them,) and a bill of sale of the same was made to the said Eunice. The furniture thus bought was used by the said Gideon till his death, and upon his death was left in the possession of his widow. He left a will giving to his widow all his personal estate of every kind. The plain-

tiff, as the executor of the said Gideon, now claimed the furniture as a part of his estate; the defendant, as administrator of the estate of said Eunice, claimed it as a part of her estate.

On the 8th of May, 1852, during the life and coverture of said Eunice, Selleck Sherman and Francis Jeliffe executed the following note, and delivered the same to the said Gideon:

"Fairfield, May 8, 1852. On demand for value received we promise to pay to Eunice Morehouse, wife of Gideon Morehouse, four thousand two hundred and seventy-five dollars, with interest until paid.               Selleck Sherman,
                                Francis Jeliffe."

This note was given for the price of land belonging in fee-simple to said Eunice, received by her under her father's will, and conveyed by her and her husband to the said Sherman and Jeliffe in the year 1852. The note had at all times remained in the hands of the said Gideon and was always claimed by him till his death. The plaintiff now claimed it as a part of his estate, while the defendant claimed it as a part of the estate of said Eunice.

On the 22d of July, 1852, Edward Eddy executed a note for $500, payable to the said Eunice, for the price of land belonging in fee to her, and which was at that time conveyed by her and her husband to the said Eddy. After the note was given Eddy did painting on buildings belonging to her, to the amount of $200, under an agreement with her and her husband that the work should be applied on the note as part payment. The note was always kept and claimed by the said Gideon, and was in his hands at the time of his death, and the bill for the painting was never indorsed on it. The administrator of the said Eunice claimed the note as a part of her estate. The executor of the said Gideon claimed it as a part of his estate, and further claimed that if it was not so the bill of the said Eddy for painting should be allowed as a part payment of it.

At the death of said Eunice there were standing in her name certain bonds of the New York and Erie Railroad Company, payable in the year 1871, with interest coupons attached. These bonds were received by her for certain real

estate belonging to her in fee simple, and which she had received by devise from her father, which had been sold and conveyed by her and her husband in the year 1852. After her death the said Gideon, as her administrator, exchanged the bonds for a certificate entitling her estate to receive from the railroad company an equal amount of preferred stock of the company, when such stock should be ready to be issued. Since the death of said Gideon the defendant, as administrator of said Eunice, had obtained possession of the certificate and surrendered it to the company, taking in return twenty-four shares of the stock of the company in his own name, as administrator of the estate of said Eunice, on which he had paid an assessment of sixty dollars. Said Gideon, after the death of said Eunice, and while he held the bonds as her administrator, had received $560 as interest thereon, which he had appropriated to his own use. Her administrator now claimed this stock, and also the $560 so received by the said Gideon. The executor of the said Gideon claimed the stock, and the right to retain the interest so received.

At the time of the death of said Eunice there were standing in her name two shares of the stock of the Bank of America, in the city of New York, which were received for certain personal estate sold, which had been distributed to her from the estate of her brother, Smith Robinson, who died in the year 1840. These shares after her death the said Gideon as administrator of her estate sold for $200, which he deposited in the Southport Savings Bank in the name of her estate, where it had since remained, no interest nor any part of the principal having been drawn out. The administrator of the estate of said Eunice claimed this deposit, with the interest that had accrued upon it. The executor of the said Gideon claimed it as the property of the said Gideon, and the interest that had accrued upon it during his life time, if the principal should be held not to be his property.

In 1852 the said Eunice deposited in the Southport Bank, in her own name, the proceeds of certain real estate devised to her by her father and which was sold by her, which amounted, in April, 1855, to $367, when it was drawn out by

the said Gideon, after her death ; he giving a receipt therefor, in which he agreed to indemnify the bank against any damage from the delivery of the money to him.  Her administrator now claimed that the deposit, with the interest accrued, belonged to her estate.  The executor of the said Gideon claimed that both, and, if not both, the interest that had accrued in the life time of the said Gideon, belonged to his estate.

The questions arising on the foregoing facts were submitted by the parties to the superior court, and were reserved by that court for the advice of the supreme court.

*Hawley,* for the plaintiff.

*Loomis,* for the defendant.

SANFORD, J.  The first point presented for our decision upon the facts stated is, which of these claimants is entitled to the furniture in question.

Before the act of 1849, (Comp. of 1854, p. 376,) it had been settled by an uniform course of decisions in this state, that personal property accruing to a wife during her coverture by devise or descent, vested immediately and absolutely in her husband, even before distribution.  *Griswold* v. *Penniman,* 2 Conn., 564 ; *Fourth Ecclesiastical Society in Middletown* v. *Mather,* 15 id., 587 ; *Winton* v. *Barnum,* 19 id., 171 ; *Edwards* v. *Sheridan,* 24 id., 165.

But it is claimed that if the husband, Gideon Morehouse, took this property under the will of William Robinson, still it became the property of his wife by the purchase and transfer to her, operating as a gift from her husband.

That a husband may in equity make a valid gift of personal property to his wife, (the rights of creditors not interfering with such gift,) though formerly doubted, is now the established law of the state.  *Deming* v. *Williams,* 26 Conn., 226. But " courts of equity require clear and incontrovertible evidence to establish such gifts as a matter of intention and fact."

2 Story Eq. Jur., §§ 1375, 1381 ; 1 Bright on Husband and Wife, 33 ; *McLean* v. *Langland,* 5 Ves., 79.

Here the purpose and intention of the husband to give the furniture to his wife does not distinctly appear. The only evidence of such intention is, that the bill of sale was made out in her name. But it does not appear that it was so made either by his direction or even with his knowledge. And this evidence, slight and unsatisfactory as it is, is greatly shaken, if not conclusively repelled, by the admitted facts, that although he took letters of administration on her estate, he always, after as well as before her death, treated the property as his own, not hers ; and finally left it in possession of his second wife.

The executor of Gideon Morehouse's will is entitled to this property.

Secondly, as to the note given by Sherman and Jeliffe.

The act of 185ᴜ, (Comp. of 1854, p. 377,) provides that " in every case where the real estate of a married woman has been or shall be sold, and the price or avails thereof secured or invested in her name, or in the name of a trustee for her or for her benefit, the same shall in equity be deemed to belong to her, and shall not be liable to be taken on execution for the debts or liabilities of her husband." This note was given for the price or avails of Mrs. Morehouse's real estate sold, and by the husband and wife conveyed, in May, 1852, and must be deemed to belong to her at the time of her decease, and now to be part of her estate. The note was made payable to her, and within the popular meaning of the terms, as well as within the equity and spirit of the statute, was " secured and invested in her name."

Bills of exchange, bonds for the payment of money, and promissory notes, are in the popular acceptation of the term " securities " for money. Blackstone, in his Commentaries, (Vol. 2, p. 466,) says, " A bill of exchange is a *security* originally invented," &c. So Chitty (on Bills, p. 4,) says, " This *security,* (a bill of exchange,) is in some respects preferable to a bond," &c. " There are however some disadvantages accompanying this *security,*" &c., (p. 5.) " In practice how-

ever notes are seldom given in ordinary commercial transactions, but are confined to acknowledgments and *securities* for and mode sof paying private debts," &c., (p. 517.) One of the definitions given by Webster to the word " secured " is, " put beyond hazard." And is not a debt " put beyond hazard " when the creditor has obtained for it the promissory note of one or more individuals of abundant property and undoubted credit ? Our statute (ed. of 1835,) says: " All moneys at interest secured by notes or bonds of responsible persons shall be set in the list for taxation, &c." And the same language is employed in the statute, in the revision of 1821, p. 448. We think we should disregard the obvious policy of the law, and defeat the purpose and intention of its framers, if we were to give to these terms, " secured " and " invested," as they are used in this enactment, the restricted signification contended for by the learned counsel for Mr. Jennings. Promissory notes among our people are regarded as " securities " for money, more or less valuable indeed in proportion as the pecuniary ability and credit of the makers of them are more or less reliable. They are the subject of sale and transfer like ordinary articles of merchandize, and money paid for a note, and especially for a note carrying interest, may with entire propriety be said to be " invested " in that note. The bonds and promissory notes of the government of the United States and of the individual states, of municipal corporations, &c., are familiarly spoken of as the subject of " investment." They are considered good " securities," and therefore capitalists " invest " in them, and the money so " invested " is " secured."

We think that the whole amount of this note, both principal and interest, belongs to the estate of Mrs. Morehouse. Upon this point the statute seems conclusive. The case states that the " note was given for the price of land of said Eunice " and the statute says that " when the real estate of a married woman has been or shall be sold, and the price or avails thereof secured or invested in her name," &c., " it shall in equity be deemed to belong to her," &c. The legislature might have enacted that some specific portion of the proceeds of the sale of the wife's real estate should belong to the hus-

band, but it has not; probably deeming it safe to leave to the husband himself the protection of his own interests.

In regard to the respective interests of the husband and the wife in the wife's real estate during the coverture, they do not stand on equal ground. The husband can at pleasure sell his interest in the property, and realize the proceeds of it, whether the wife assents to such sale or not, but she can make no disposition of her interest in it to operate during her life without his concurrence. The husband therefore has always ample power and opportunity to protect himself; and it seems an entirely fair presumption that he has either taken to himself his due proportion of the proceeds of the property at the time the sale was made, or intentionally relinquished the whole of such proceeds to his wife.

3. The note against Eddy stands upon the same ground and belongs to the estate of Mrs. Morehouse. But the bill for painting ought to be deducted from it, according to the agreement of all the parties when the work was done. Though not indorsed, as it should have been, it was nevertheless an effective payment upon the note.

4. The Erie stock, and the whole proceeds of the Erie bonds also, belong to the wife's estate. The bonds were the avails of real estate devised to her by her father, and sold by her and her husband in 1852. They stood in her name when she died. Her husband as her administrator surrendered them, and took a certificate entitling *her estate* to stock when it should be issued; and Davis, the present administrator, exchanged the certificate for the stock, paying out of her estate an assessment of sixty dollars. Thus the proceeds of this sale of the wife's real estate are clearly traced through the bonds and the certificate into this stock—the property of the wife being by the husband in every stage of this transition distinctly recognized. The " avails " of the wife's real estate were originally " invested " in the bonds, and are now invested in the stock, as the husband manifestly intended it should be, and this stock must be deemed part of her estate.

It is of no importance that Davis obtained possession of the certificate without Jennings' consent. Davis had a right to

that possession, and a right to exchange the certificate for the stock, whether Jennings assented to it or not.

Had Mrs. Morehouse been alive when her husband surrendered the bonds and took the certificate *in her name*, that act would have furnished unequivocal evidence of his understanding that the property was hers, and of his intention to estop himself and his representatives from claiming it. His acting as her administrator in surrendering the bonds and taking the certificate in the name of her estate after her death, must have the same effect.

5. The Erie bonds being the property of the wife at the time of her decease, they passed to her administrator as part of her estate, and her husband had no right to them or to the interest or income accruing from them. (1 Swift Dig., 26.) Therefore the $560, being the interest accrued upon these bonds and appropriated by the husband to his own use, belonged to her estate, and ought to be refunded to it from his.

6. The deposit in the Southport Savings Bank.

It is true, as claimed by the counsel for Mr. Jennings, that the personal property which came to Mrs. Morehouse by inheritance or distribution from her brother's estate in 1840, as the law then stood, prima facie vested in her husband. But he suffered her to invest it *in her own name* in the stock of the Bank of America. · He never received any dividends or profits which accrued on that stock. After her death, and acting as her administrator, he sold the stock and deposited the proceeds of the sale in the savings bank *to the credit of her estate.* He thus furnished by his conduct that clear and satisfactory evidence of his intention to give this property to his wife, and to relinquish all his claims upon it, which courts of equity require to uphold a direct donation from a husband to his wife. See *Deming* v. *Williams*, 26 Conn., 226.

Lastly, the money deposited in the Southport Bank also belonged to the wife's estate.

Her real estate was sold, and this money, the proceeds of the sale, *she* deposited *to her own credit* in the bank in 1852. And there it remained, her husband making no objection, so

far as we are informed, to its standing to her credit on the books, and no claim upon it until April, 1855, six months after her decease.

It is not stated whether the money was deposited in the bank for safe keeping merely, or in the character of a loan to the bank for which a stipulated rate of interest was to be paid during its continuance there; nor is it material to inquire, because, in either case, the deposit (being a general as contradistinguished from a special one) created a debt in favor of the depositor and against the bank, and then the money became " invested " in that debt, and being thus invested in the name of Mrs. Morehouse was protected by the statute against her husband's claims upon it. Money paid for costly jewels or precious stones, though they produce no income, is as truly " invested " as money paid for bank stocks or government securities. It can make no difference whether the depositor took any written evidence of this investment or did not. The statute does not require any particular species of evidence that the investment has been made; it only requires that it should be made in her name, or in the name of a trustee for her or for her benefit. Money loaned is " invested " in a debt against the borrower. If a promissory note is taken for it in the lender's name, the note becomes the evidence of the investment and secures it to the lender. If no note is taken, the money is nevertheless " invested " in the debt against the borrower and in the lender's name.

The object of the legislature was to protect the interests of the wife, and to effect that object the proceeds of the sale of her real estate, while it remains in money, must be protected until its ultimate investment in something else. And if a deposit in bank to the credit of the wife is not in strictness an investment in her name, then the money is in effect still in the wife's possession, awaiting an opportunity for investment, being merely kept in the bank as in a place of safety. And in either case it is protected by the statute as her property.

In this opinion the other judges concurred.