Bissell, J.
On demurrer the defendants had judgment. Many issues of law were presented, some dozen in number. The principal ones concern the misjoinder of parties plaintiff, the misjoinder of parties defendant, the union of causes of action, and the want of sufficient facts to constitute a cause of action. Counsel have supported their respective contentions with briefs of unusual and extraordinary length, and by the citation of hundreds of cases which were supposed in a greater or less degree to uphold the complaint or demonstrate its insufficiency. It cannot be said that the issues directly raised some and not others of the matters suggested, and under other circumstances the court might feel obligated to consider and determine each one of them. What this labor would amount to may be seen from a few suggestions. The suit was brought against *336 the directors of the Colorado Savings Bank to compel them to replace a large amount of money which had been lost in the conduct of the business. Originally the complaint was divided into upwards of 100 causes of action, each preceded by the general allegation necessary to state an independent cause of action. By amendment this particular averment was struck out and it left a statement of a cause of action against the various defendants on 104 different items as counsel for the plaintiff designate them. When it came to the prayer, the pleader prayed judgment against specifically named defendants for definite amounts with no prayer for judgment for the sum total of all the items. There was likewise a concluding phrase common to equity bills “ for such other and further relief as should be meet and proper.” The statement of the first item or cause of action was substantially that between certain dates, February, 1890, and July, 1892, the defendants were directors of the bank and invested a portion of its assets and deposits, to wit, the sum of $1,440, in the purchase of a personal obligation of three persons named. Evidently, this was the purchase of the promissory note of the makers, payable to the order of another, and indorsed to the bank, and it was alleged that the obligation was not evidenced by a bond, or secured by mortgage on unincumbered real estate, although it was secured by trust deed on real property worth less than the amount of the loan, and on sale only about $400 was realized. It was further averred that .the makers and the indorser had not paid tire $1,440 nor any part of it, except the $400 and then charged this act of the directors in thus loaning and investing the funds was in violation of the statutes and to the injury of the plaintiffs. While in some of the other 103 causes of action, the facts are differently charged, some times as the discount of paper, some times as a loan on insufficient realty, and in various other ways, all of them substantially represent what in law is a precisely similar cause of action or item, and the prayer with reference to each is identically the same. The amounts are stated definitely, were known to the plaintiffs, required no dis *337 covery from the defendants and were easily and clearly traceable, and the default, if any, might be proved without difficulty and without aid from the directors. The bank had become insolvent, made an assignment of all of its property, and whatever right, title, or interest the bank had in its assets, vested in Thomas B. Stuart, the assignee. The pleader brought suit in the name of the bank and the assignee jointly. The defendants named were all of the directors who had served in that capacity from 1890 to the failure of the institution. Some of these directors had held office during all the time, and part of them at different portions of the time, during which these loans were made and the losses sustained.
This clearly shows that these various grounds of demurrer are all involved and are legitimate subjects of argument. We find no fault with counsel for attempting to maintain the bill by the discussion of these various propositions, nor with the counsel for the appellees who have attacked the complaint on these various bases. The only trouble is, the discussion has taken such an uncommonly wide range and the citation of authorities is of such an overwhelming character that it is scarcely permitted to any court to examine, comment on, or do more than express a general opinion respecting all these propositions. I am very frank to say, that I have read and examined either casually or completely but a very small percentage of the cases cited. The labor is evident, when we consider that to determine the question of the misjoinder of parties plaintiff and misjoinder of parties defendant, compels a consideration of a long line of authorities which in turn are modified by the inquiry, whether this is an action at law or a suit in equity, and collaterally, whether for the breach of the obligation of the directors, the corporation or its assignee may file a bill to compel the directors to account and respond, and a different rule will prevail in the two different cases. There are many cases cited to us from New York and other states which hold that a bill in equity may be brought by a stockholder, and a few cases which incline to the opinion that a bill may be filed by the bank *338 against its directors where an accounting or a discovery is necessary, or such procedure may be upheld on the theory of preventing the multiplicity of suits. To properly resolve all these questions would he an enormous task arid consume many days. We should also be compelled to decide, whether there is in the complaint any allegation whatever which would tend to uphold the jurisdiction of a court of equity. There is not within the four corners of the complaint, a solitary allegation ordinarily deemed requisite to give a court of equity jurisdiction of such matters, other than the statement of so many items or causes existing, some against all, and others against part of the defendants. We cannot gather from the circumstances and facts contained in the complaint anything from which we could conclude that such courts would have had jurisdiction under this form of practice. While we do not intend to decide whether equity has jurisdiction, putting the decision on other grounds, I have thought it best to throw out what I say on this subject more by way of suggestion and personal opinion than as the mature conclusion of the court based on an examination of the proposition. So far as may be gathered from the complaint no more suits would be requisite in a case of this sort than if they had been brought on so many promissory notes where different aggregations of defendants had made themselves liable by signature or indorsement of the paper. It is equally true that the.complaint demonstrates from its own terms that an accounting is not necessary, and that in no sense in which that term is used in the 'books is the matter of an account presented. It is not a case, nor does it resemble a case, where the agent representing his principal and carrying on a long course of dealings, has fraudulently or negligently misapplied and misappropriated the funds of his principal, rendering an accounting between the parties requisite to the ascertainment of the sum due from the agent to the principal by reason of his misconduct. It is nowhere charged that the defendants, as directors, have been guilty of any fraudulent or other misappropriation of the funds of the bank which would amount *339 to any of the various kinds of misfeasance otherwise than as it is alleged the defendants loaned the money, as I think it may he accurately put from the phraseology of the pleading, contra for mam statuti. Such is the only act charged against the defendant. Under these circumstances we feel wholly justified and believe that we are completely discharging our duty to litigants in this case if we can find any one point or any one question on which the judgment may be upheld, because as the case now stands our conclusion will be an absolutely final determination of the controversy. This we believe we have found, and found under the one general ground of demurrer for want of facts sufficient to constitute a cause of action.
The liability of directors of banking corporations, whether savings banks or banks of deposit and discount, for the loss of their deposits, must be, and always is, predicated either on the violation of some statute, or on a misconduct, negligent or willful, of the officer. Damages which come to corporations or depositors by reason of a violation of restrictive legislative acts, or by some of the several sorts of misfeasance, or possibly, nonfeasance, give rise to a cause of action. With the latter inquiry we have nothing to do. It is wholly unnecessary, therefore, to consider whether what the directors did, was done in good or bad faith, or the degree of care which trustees or directors must exercise in the discharge of their duty. We are relieved from the necessity to enter the much discussed field whether the trustees are liable for crassa negligentia, which accurately interpreted means gross negligence, or whether they are liable when they have simply omitted that care which a man of ordinary and common prudence exhibits in the management of his own affairs. This is a wide field and many authorities have been cited by counsel to the point. If we had reached it and been compelled to decide it much skill and labor would have been necessary to correctly resolve it and reconcile the various judicial expressions on the subject in the books. The lack of any allegations charging the directors with such misconduct we think wholly re *340 moves this question from the ease. Thus the sufficiency of the statement of a cause of action is limited and narrowed to the single inquiry, whether the plaintiff stated a cause of action under the statute.
There is undoubtedly a very wide distinction between savings banks and banks of discount and deposit, ordinarily termed commercial institutions. A very large branch of the appellants’ argument has been devoted to the discussion of the relation of the bank to its depositors, and argument to the point that the directors are trustees and the depositors cestuis que trust. The whole discussion and all the authorities directly applicable are really those where the banks were savings banks pure and simple. We are free to admit that if such was the condition of this' bank and such its nature, it might well be contended the directors did hold to the depositors a relation of confidence and trust because that is the condition where the bank is not a commercial one. As we look at it, the Colorado Savings Bank had a title which was in one sense a misnomer. We do not find any enactment which provides for the creation and establishment of savings banks. The savings banks of Colorado, organized under the statute are not institutions for the sole conduct of the business ordinarily done by such organizations. That such banks exist in this country is clearly shown by various cases and the rules and principles which the courts have laid down in discussing the liability of directors of institutions of that class are in unison, but neither the principles nor'the arguments by which they are supported are applicable in other cases. Under our statute, savings banks so-called, can only be organized as concerns with a capital stock of not less than $25,000 or more as the organizers may determine. When they comply in all other respects with the act they are entitled to receive deposits. When a deposit is made the depositor does not thereby become entitled to all the accretions of the business. The assets and property, the gains and profits are not his. His deposit is made subject to the right to receive such interest as the directors may agree to pay. *341 Power to determine what they will pay is left to the directors and the balance may be divided among the stockholders as resulting profits in shape of dividends. This feature destroys the force and effect of the arguments of counsel respecting the relation between the depositors and the directors, or the depositors and the bank and renders inapplicable those decisions which hold them to be naked trustees and the depositors the owners both of the deposits and the profits, and relegates the whole inquiry to the one proposition, whether the directors so violated the statute as to make them liable for the losses which the bank sustained by improvident loans, and whether the loans which they did make were in fact a violation of the statute. This question has received attention in other states whose judges have reached the same conclusion. Ward v. Johnson, 95 Ill. 215; Oulton v. Savings Institution, 17 Wall. 109; Wells v. Black, 117 Cal. 157; City of Los Angeles v. State Loan & Trust Co., 109 Cal. 396; People v. The Mechanics & Traders’ Savings Institution, 92 N. Y. 7.
With this premise we now proceed to consider the pivotal proposition, whether the acts charged were violations of the statute, or whether thereunder it is clear the directors had' the right to make the loans or the investments on the securities in the form and in the shape in which the various loans and discounts which are supposed to constitute the cause of action were made. It will be more convenient to cite the authorities supporting the position which the court takes prior to the discussion. Jennings v. Davis, 31 Conn. 134; Shoemaker, Auditor, etc., v. Smith, 37 Ind. 122; Gee v. The Alabama Life Ins. & Trust Co., 13 Ala. 579; Williams, Receiver, etc., v. McKay et al., 46 N. J. Equity, 25; Duncan v. The Maryland Savings Institution, 10 Gill & Johnson, 299; Scott v. Depeyster, 1 Edwards’ Chancery, 612.
Much learning has been expended in the discussion of the question of the proper interpretation of the statute which in general is : “ The board of directors or trustees may invest one half of the deposits on personal security, on bonds and stocks of the state or the United States, bonds of any city, *342 town or school district authorized to issue or loan, on bonds secured by mortgage, on unincumbered real estate worth at least double the amount of the loan, or in such other manner as maybe authorized by the act.” The same section also provides that the remainder may be deposited temporarily in national banks or kept in the bank on deposit, interest, or otherwise in such form as the directors may determine. The burden of the appellants’ discussion respects the construction of the word “invest” and the limitation that the security must be worth double the amount of the loan. It is the argument that according to the lexicographers the word “ invest ” excludes the idea of a loan or a discount of paper, and that the expression “ worth at least double the amount” extends to all the investments specified, including the loans on real estate. We are wholly unable to follow counsel to his logical conclusion. The word “ invest ” has been variously construed by the authorities to which we have referred and has a significance, whether primary or secondary seems to us unimportant, which would include loans made by the discount of paper or loans made on commercial paper, whether signed by two or more, and whether made to the order of the ■bank or made to another and transferred by indorsement. We do not concede that the.limitation “ worth double the amount ” is applicable to all the items specified as the basis for the investment of the funds which the bank takes in by way of deposit. It would be folly to ass.ert that if the board invested half of its deposits in bonds of the United States that they could only loan on those bonds one half of the sum represented by the principal _ and interest due on the security at the time of the investment. Everybody knows that you can borrow of anybody or any bank on government bonds the face of the bonds and accrued interest because they are absolutely ad equate, perfect and complete securityfor the sum loaned. If they bear a premium like what are known in the market as “ Grovers,” whether twelve or twenty per cent, you can borrow principal, interest and premium, barring a very small percentage to cover fluctuations, and any *343 possessor of funds would regard himself as fortunate if able to loan money on such security. This is a complete answer to the contention that that phrase applies to anything else but the loans on real property. It is quite true that it is charged as to some of these loans that they were on real estate which was worth less than the amount of the loan. It may be that with respect to those loans on real estate the plaintiff might have presented an issue requiring an answer, if his allegation about the value of the property at the time of the loan had been sufficiently definite and accurate. We do not believe, however, the plaintiff can bring suit against the directors for a violation of the statute without a direct. charge that at the time the loan was made and the mortgage taken, the property which ought to be described in the complaint was not worth at that date double the amount of the loan. Taking the first item as an illustration, it states the foreclosure but the date of it is not given, and it states that on foreclosure the property only brought $400. Non constat under this general and indefinite averment, the property was not worth double the amount when the loan was made. This is not established by a subsequent foreclosure and the realization of less than half the sum of money loaned. The loan may have been foreclosed after the panic, which would furnish good reason for the failure to secure the price, and the property might have been worth in the judgment of dealers in securities double the amount of money loaned thereon when the transaction was had. It may be also, that the money was not loaned on bond and mortgage, or on mortgage secured by deed; it may have been loaned on paper, or the paper may have been bought, and it may have been secured by this mortgage, and if it was not loaned directly on the mortgage and on the strength of the security, the statute manifestly would be wholly inapplicable. The complaint then lacks the allegations essential to the statement of a cause of action for the breach of this particular provision of the act. The second item or cause of action is a better illustration of the appellants ’ contention than the first. This directly charges *344 a loan to Betts, Bradford and Kerns for thirty days at one per cent for $1,000 on the personal obligation or note of these parties. The directors are sought to be held because they loaned the money on the personal security of those individuals, and it is contended the directors were without authority to invest in that sort of a security. We cannot concede it. In the first place it is a matter of common knowledge among people who have money and loan it, among all those who conduct monetary institutions, and in the commercial world generally, that personal securities are bills of exchange, promissory notes, drafts, and all other kinds and descriptions of personal paper which are used in the transaction of the business of the country. Such is the definition of the commercial world of the term “ personal security,” and it is supported by the cases to which we have referred. We find it also sustained by the very provisions of the act under consideration. The savings bank act is not a distinct and specific act passed to regulate and control such institutions, but is part and parcel of a general act respecting corporations, many of the provisions of which are applicable to savings banks and their directors as well as to other banking corporations. For instance, section 279, Gen. Stats. 1883, which makes the officers and stockholders of every banking eorporation liable for debts, is applicable alike to ordinary commercial institutions and savings banks, expressly made so by section 287, found under the subdivision of savings banks in the general act. Section 291 likewise inhibits any officer of a savings bank from either borrowing or becoming surety for any borrower of any of its funds. It likewise directly provides that no savings bank shall discount any paper made, accepted or indorsed by its cashier or any of its clerks, or by any partnership of which either is a member. This provision Avould be wholly futile and unnecessary if the construction contended for by the appellant is true, that they could in ho eArent by investment discount paper or loan on any personal security of this description. We therefore conclude that the complaint does not charge any acts done which are prohib *345 ited by the act, and as the loans might be made under this statutory authority, no cause of action came either to the corporation, the depositors, or the assignee for the resulting losses. We do not intend to hold that these loans might not have been so charged as to give rise, if sustained by proper proof, to a liability on the part of the directors, if the complaint was full to the point and in apt terms to show fraudulent, wrongful or negligent conduct on the part of the trustees, which under the general principles governing actions of this description would be held a breach of the trust imposed. A cause of action might thus be stated. The plaintiffs, however, have chosen to rest their case on the naked plea that loans on personal security were contrary to the statute, and that there was a consequent liability. When we deny this proposition and decide to the contrary it leaves no case stated in the bill, and the demurrer to it was properly sustained.
The judgment of the court below is in harmony with our views and will accordingly be affirmed.

Affirmed.