## Joseph K. Cass v. Yale University et al.

1. CORPORATIONS—*Power of University to Purchase Notes and Mortgage Under Charter—Ultra Vires.*—Under a charter granting the right "to have, take, possess, acquire, purchase, or otherwise receive lands, tenements, hereditaments, goods, chattels, or other estates, to grant, demise, lease, use, manage, or improve, for the good and benefit of the said college, according to the tenor of donation and their discretion," a university has the power to invest its funds, by purchasing notes, bonds and mortgages.

**Foreclosure of a Trust Deed.**—Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed April 20, 1903.

This is an appeal from a decree foreclosing a trust deed in the nature of a mortgage.

Appellant, Joseph K. Cass, October 13, 1891, executed his promissory note for the sum of $12,000, payable to his own order five years after said date, with interest at six per cent per annum, payable semi-annually, and evidenced by ten interest notes. Both principal and interest notes were indorsed by appellant. To secure payment of said principal and interest notes, etc., appellant and his wife, October 13, 1891, executed to Francis B. Peabody, as trustee, a trust deed of certain real property therein described. The trust deed was recorded October 15, 1891. October 13, 1896, when said principal note matured, by agreement between George W. Cass and Peabody, Houghteling & Co., who were then the holders of the said principal and interest notes, the said notes were extended three years from October 13, 1896.

January 12, 1894, prior to the last mentioned extension, appellant executed a promissory note for the sum of $13,000, payable to his own order, due one year after said date, with interest till maturity at six per cent per annum, payable semi-annually, and thereafter at seven per cent per annum, and indorsed the same in blank. At the same date, and to secure payment of said note, appellant and

his wife executed to Wilson C. Baker, trustee, a mortgage of the premises described in the first mentioned trust deed executed to Francis B. Peabody. The trust deed to Baker was recorded February 27, 1894, and appellant is the owner of the same and the note secured thereby.

January 2, 1897, after the extension of the note first above mentioned, Yale University, appellee, purchased said first mentioned note and trust deed from Peabody, Houghteling & Co. Yale University filed a bill against appellant, Joseph W. Cass, and others, to foreclose the trust deed executed by said Cass to Francis B. Peabody, and issues having been made up, the cause was referred to a master to take proofs and report. The master found in favor of the complainant, and that there was due complainant the sum of $13,809.44, and that complainant has a valid first lien on the premises described in the trust deed; also that there is due appellant the sum of $20,111.42, and that he has a valid lien, subordinate to the lien of Yale University, for that amount. Objections of appellant to the master's report were overruled by the master, and were ordered to stand as exceptions on the hearing. The court overruled the exceptions, confirmed the master's report and decreed in accordance with the master's findings.

WILLIAM P. ELLIOTT and CHARLES T. MASON, attorneys for appellant.

GEORGE H. KARCHER and AUGUSTUS S. PEABODY, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The contest here is solely between appellant, the owner of the second note and trust deed, executed January 12, 1894, and Yale University, the owner of the first note and trust deed executed October 13, 1891. Appellant's counsel contend that Yale University, a corporation, had no power to purchase the note and trust deed in question from Peabody, Houghteling & Co., and, therefore, that the purchase was void, and appellant is entitled to a first lien on

the premises described in the trust deed. Whether such purchase was *ultra vires* Yale University is the main question to be decided.

Yale College was chartered May 9, 1745, by the "Governor and Company of His Majesty's Colony of Connecticut, in New England, America." The charter, after reciting that October 9, 1701, the said Governor and Company granted to certain named persons, and to their successors, full liberty, right and privilege to erect, etc., and at all times, in all suitable ways, to encourage a collegiate school; and that, in pursuance of said grant, Yale College was founded, and that the general court of the colony, in 1723 enlarged said powers and privileges, and certain named persons, trustees, etc., have petitioned that said school, with all its rights, power and privileges, may be confirmed, and that such additional powers may be granted as may be necessary for the ordering and managing of said school in the most advantageous and beneficial manner; it is enacted, ordained and declared that certain named persons and their successors shall be a body public and corporate by the name of "The President and Fellows of Yale College in New Haven," and shall, among other things, be capable in law "to have, take, possess, acquire, purchase, or otherwise receive lands, tenements, hereditaments, goods, chattels, or other estates, and the same lands, tenements, hereditaments, goods, chattels or other estates, to grant, demise, lease, use, manage, or improve, for the good and benefit of the said college, according to the tenor of their donation and their discretion."

The charter also contains the following:

"That the president and fellows shall have due government, care and management of the said college and all the matters and affairs thereunto belonging."

The charter exempts from taxation the lands and ratable estate belonging to the college, not exceeding the yearly value of five hundred pounds, and the persons, families and estates of the president, professors and the persons of tutors, students, etc., of the college, and granting to the college, in

lieu of all former grants, one hundred pounds silver money, at the rate of six shillings and eight pence per ounce, payable half yearly.

May 4, 1834, the following act was passed by the legislature of Connecticut:

" Be it enacted by the Senate and House of Representatives in general assembly convened, that the fund which has been or may hereafter be granted, provided by the State of Connecticut, or given by any person or persons to the corporation of the president and fellows of Yale College in New Haven, and by them invested and held for the use of that institution, shall, with the interest thereof, be and remain exempt from taxation. Provided, however, that the said corporation shall never hold in this state real estate free from taxation, affording an annual income of more than six thousand dollars; and provided also that the private property of the officers of the institution shall not be exempt from taxation; and that the said corporation shall, on or before the first day of September, A. D. 1834, give its assent to this act, and transmit the evidence thereof to the secretary of the state, to be by him recorded."

By an act passed July 6, 1871, the name of the corporation was changed to " Yale University."

The powers granted by the incorporation act of 1745 are very comprehensive and large discretion is granted to the corporate authorities. The language is "to have, take, possess, acquire, purchase, or otherwise receive lands, tenements, hereditaments, goods, chattels, or other estates, and the same lands, tenements, hereditaments, goods, chattels, or other estates, to grant, demise, lease, use, manage or improve, for the good and benefit of the said college, according to the tenor of donation and their discretion." Under this grant of powers there can be no doubt that the corporation could acquire any property whatever, and dispose of the same as to its managing officers might seem proper " for the good and benefit of the corporation," limited only by the terms of the donation, in cases in which the property was acquired by gift or donation. The word "chattel" includes every species of property, movable or immovable, which is less than a freehold, and the word "goods" includes stocks, bonds, notes, money, etc. Bouvier's Law

Dictionary. The act of 1834, above mentioned, recognizes the power of the corporation to invest the fund mentioned in the act by providing that, when such fund is invested, it shall be exempt from taxation. It is recited in the charter of 1745 that gifts, grants, bequests and donations of lands, tenements, hereditaments and goods and chattels had theretofore been made to the college, and, by the act of 1834 the same is recognized, and further, it is anticipated that thereafter there would be other like donations and grants, and that act, as before stated, expressly recognizes that the fund created by such grants and donations may be invested. It is not contended that the act of 1834 was not assented to by the corporation. We think it clear that the corporation, by virtue of its charter and the act of 1834, had ample power to invest its funds, by purchasing notes, bonds and mortgages. The purchase of the note and mortgage in question was an investment. Jennings v. Davis, 31 Conn. 134; Savings Bank v. Barrett, 126 Cal. 413.

The decree will be affirmed.